IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| REBECA SABLE, *et al.*, | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No.: 1:20-cv-00557-JMC |
| BALTIMORE COUNTY | * | |
| GOVERNMENT, *et al.*, | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This suit, brought by Rebeca Sable, Ethan Sable, Annabel Sable, and Elaina Sable (collectively, "Plaintiffs"), arises from fatal injuries sustained by Alex Sable ("Decedent" or "Mr. Sable") during a SWAT aquatics training course conducted by the Baltimore County Police Department ("BCPD"). (ECF No. 30). Plaintiffs assert claims for violations of Articles 19, 24, and 26 of the Maryland Declaration of Rights and various common law tort claims. The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c) and Local Rule 301.4.

Plaintiffs filed an amended complaint in the Circuit Court for Baltimore County, Maryland on July 31, 2019 (ECF No. 3) and Defendants removed the matter to this Court on March 2, 2020. (ECF No. 1). Defendants filed a Motion to Dismiss Plaintiffs' Complaint for Failure to State a Claim. (ECF No. 22). Plaintiffs filed an Opposition, (ECF No. 23) and Defendants filed a Reply. (ECF No. 26). Plaintiffs then moved this Court for leave to file an amended complaint on November 10, 2020, which this Court granted. (ECF Nos. 27; 29). Plaintiffs' now-operative Amended Complaint names a new defendant—the Community College of Baltimore County

1

("CCBC")—and includes several new counts against CCBC.  (ECF No. 30).  Because CCBC does not join in the present motion,[1] references to "Defendants" herein refer only to the moving defendants: BCPD Officer Deitz and BCPD Officer Luck (together the "Defendant Officers") and Baltimore County, Maryland (the "County").  Defendants then filed a Motion to Dismiss Plaintiffs' Amended Complaint for Failure to State a Claim.  (ECF No. 31).  Plaintiffs filed an Opposition, (ECF No. 35) and Defendants filed a Reply.  (ECF No. 36).

The issues have been fully briefed and no hearing is necessary to resolve this motion.  *See* Local Rule 105.6.  For the reasons more fully explained below:

1. Defendants' Motion to Dismiss Plaintiffs' Complaint (ECF No. 22) is **DENIED as MOOT**.

2. Defendant's Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 31) is **GRANTED without prejudice**.

## I.    FACTUAL BACKGROUND

According to the operative Amended Complaint, on May 6, 2018, Mr. Sable took part in a SWAT aquatic training exercise in Baltimore County, Maryland.  (ECF No. 30 at 2).  The BCPD Tactical Team facilitated the program at the Community College of Baltimore County ("CCBC") campus.  *Id.* at 3.  Mr. Sable, a York City, Pennsylvania police officer, participated in the program to become part of the York County, Pennsylvania Quick Response Team.  *Id.* at 2.  BCPD took responsibility for medical care during the event, and provided medical equipment, medics, lifeguards, and staff to attend to the health of the participants.  *Id.* at 3.  Baltimore County Fire Department ("BCFD") was stationed on scene for patient transportation as needed.  *Id.*

---

[1] CCBC filed its own Motion to Dismiss for Failure to State a Claim (ECF No. 39), which is not yet ripe.

Pursuant to the training, Mr. Sable and other participants completed a series of physically demanding exercises in and out of the pool. *Id.* Among these exercises, program facilitators instructed Mr. Sable—while clothed in a long-sleeved shirt, pants and boots—to hold a ten-pound weight on his shoulders and tread water for two minutes. *Id.* Observers witnessed Mr. Sable struggle to remain above water. *Id.* at 4. And, when Mr. Sable exited the pool, a BCFD transport unit medic ("Medic Sloman") noted that Mr. Sable's lips appeared cyanotic and his face pale. *Id.* Nonetheless, Mr. Sable jogged around the pool. BCPD Officer Demetris Luck ("Officer Luck"), a medic, jogged alongside Mr. Sable. *Id.*

As the training neared its conclusion, program facilitators instructed the participants to tread water for ten minutes. *Id.* During this exercise, Mr. Sable went underwater and remained there for approximately ten seconds before being removed from the pool. *Id.* Once on the pool deck, BCPD Officer Sean Dietz ("Officer Dietz"), another medic, rendered assistance by patting Mr. Sable on the back and instructing him to "cough it up." *Id.* Medic Sloman "observed Mr. Sable to be cyanotic in the face, with fluid coming from his mouth, without a pulse, and apneic." *Id.* BCPD medics provided Medic Sloman with a bag valve mask manual resuscitator and O2 bottle to begin treating Mr. Sable, but the mask was missing from the unit. *Id.* at 4–5. For this reason, the manual resuscitator was inoperable for several additional minutes while medics searched for, and eventually obtained, a mask. *Id.* at 5. BCPD medics provided Mr. Sable with additional medical treatment, including the administration of five milligrams of epinephrine. *Id.*

Mr. Sable was then transported by ambulance to Johns Hopkins Bayview Medical Center ("Bayview"). *Id.* Mr. Sable's cardiac activity was re-established after nineteen minutes of CPR and seven doses of epinephrine. *Id.* Upon arrival at Bayview's emergency department, Mr. Sable's heart rate was recorded as 106 BPM and his blood pressure was recorded as 218/34. *Id.*

As a result, Mr. Sable was diagnosed with cardiac arrest.  *Id.*  Three days later, on May 9, 2018,

Mr. Sable died as a result of cardiac arrhythmia.  *Id.*

Based upon these events, Plaintiffs assert nineteen total claims against the Officer

Defendants and the County for violations of Articles 19, 24, and 26 of the Maryland Declaration

of Rights, and common law torts sounding in negligence.

## II.    STANDARD OF REVIEW

The Defendants' Motion is predicated on Federal Rule of Civil Procedure 12(b)(6).  (ECF

No. 22-1 at 3).  The purpose of Federal Rule of Civil Procedure 12(b)(6) "is to test the sufficiency

of a complaint and 'not to resolve contests surrounding the facts, the merits of a claim, or the

applicability of defenses.'"  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)

(quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).  A Rule 12(b)(6)

motion "constitutes an assertion by a defendant that, even if the facts alleged by plaintiff are true,

the complaint fails as a matter of law, to state a claim upon which relief can be granted."  *Jones v.

Chapman*, 2015 WL 4509871, at *5 (D. Md. July 24, 2015).

In resolving a motion under Rule 12(b)(6), a court considers matters only within the

pleadings.  Whether a complaint states a claim for relief is assessed in accordance with the pleading

requirements of FRCP 8(a)(2).  To survive a Rule 12(b)(6) motion to dismiss, "detailed factual

allegations are not required, but a 'plaintiff must provide the grounds of his entitlement to relief'

and this requires 'more than labels and conclusions, or a formulaic recitation of the elements of a

cause of action.'"  *Petry v. Wells Fargo Bank, N.A.*, 597 F. Supp. 2d 558, 561–62 (D. Md. 2009)

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)).  In reviewing a Rule 12(b)(6)

motion to dismiss, "the Court must accept the complaint's allegations as true, and must liberally

construe the complaint as a whole."  *Humphrey v. National Flood Ins. Program*, 885 F. Supp. 133,

4

136 (D. Md. 1995).  Further, the Court must draw all reasonable inferences "derived therefrom in the light most favorable to the plaintiff."  *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

In resolving a motion under Rule 12(b)(6), a court considers matters only within the pleadings.  If a party presents, and the court considers, matters outside the pleadings, "the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d); *see also Humphrey*, 885 F. Supp at 136.  If the court converts the motion, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  *Id.*  However, "[a] district judge has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'"  *Verderamo v. Mayor & City Council of Baltimore*, 4 F. Supp. 3d 722, 729–30 (D. Md. 2014) (citations omitted).

Federal Rule of Civil Procedure Rule 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the burden "to demonstrate the absence of any genuine dispute of material fact."  *Jones v. Hoffberger Moving Servs*, 92 F. Supp. 3d 405, 409 (D. Md. 2015).  A "dispute as to a material fact 'is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

### III.    DISCUSSION

Plaintiffs assert nearly identical claims against Baltimore County, Maryland (the "County"), BCPD Officer Dietz, and BCPD Officer Luck.  Specifically, Plaintiffs' claims fall under the Maryland Declaration of Rights Articles 19, 24, and 26 and the various theories of common law tort.  Because the applicable legal standard depends upon the entity being sued, the Court has divided the claims with respect to such entities: (1) the Officer Defendants Deitz and Luck and (2) the County.

At the outset, it is worth noting that this Court will reject, and thereby refuse to consider, evidence outside of the pleadings in ruling upon this Rule 12(b)(6) motion.[2]  *Verderamo*, 4 F. Supp. 3d at 729–30.

### A.    Officer Defendants.

Although the claims against Officer Deitz and Officer Luck are asserted in separate Counts, they are all nearly identical.  Against the Officer Defendants, Plaintiffs assert twelve total claims: Survival Action – Negligence (Counts III, IV); Survival Action – Violation of Maryland Constitutional Rights (Counts V, VI); and Wrongful Death Negligence (Counts X, XI, XIV, XV, XVIII, XIX, XXII, and XXIII).  The Court will address the constitutional claims and state tort claims in turn.

---

[2] Namely, Plaintiffs' reliance on the Expert Report of Roy G. Taylor, Ph.D., which is attached as Exhibit B to Plaintiffs' Response, but contains facts not alleged in Plaintiffs' complaint.

### 1.  *Constitutional Claims.*

Plaintiffs' constitutional claims against the Officer Defendants arise from Articles 19,[3] 24,[4] and 26[5] of the Maryland Declaration of Rights.  (ECF No. 30 at 13; 15).

### a.  *Articles 19 & 26.*

Plaintiffs' claims sounding in Articles 19 and 26 must fail as a matter of law.  Put simply by the Court of Appeals of Maryland, "Article 19 of the Maryland Declaration of Rights does not necessarily support a private cause of action and monetary remedies.  Article 19, rather, guarantees a citizen the opportunity to seek judicial redress of a wrong."  *Dehn Motor Sales, LLC v. Schultz*, 439 Md. 460, 486 n.27 (2014) ("*Dehn*") (citing *Doe v. Doe*, 358 Md. 113, 127–28 (2000)).

As for Article 26, that provision "protects the right to be free from unreasonable searches and seizures."  *Dent v. Montgomery Cty. Police Dep't.*, 745 F. Supp. 2d 648, 661 (D. Md. 2010); *see also Liichow v. State*, 288 Md. 502, 509 n.1 (1980) (noting that Article 26, like the Fourth Amendment, "prohibits unreasonable searches and seizures").  Defendants contend that Article 26 does not apply here because Article 26, interpreted in light of the Fourth Amendment, only applies in criminal proceedings and Mr. Sable was not "seized" within the meaning of Article 26.  (ECF No. 31-2 at 6–7).  Plaintiffs' response—that the Officer Defendants' actions constitute excessive force—is more appropriately considered under the Article 24 analysis, *infra*.  Nevertheless, the

---

[3] Article 19 of the Maryland Declaration of Rights provides "[t]hat every man, for any injury done to him in his person or property, ought to have remedy by the course of the Law of the Land, and ought to have justice and right, freely without sale, fully without any denial, and speedily without delay, according to the Law of the Land.

[4] Article 24 of the Maryland Declaration of Rights provides "[t]hat no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land

[5] Article 26 of the Maryland Declaration of Rights provides "[t]hat all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grievous and oppressive; and all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not to be granted."

7

Court agrees with Defendants that Article 26 provides redress for harms inflicted by unreasonable searches and seizures, the facts of which are not alleged in Plaintiffs' Amended Complaint.

        *b.*     *Article 24.*

Turning to Article 24, Plaintiffs contend that the Officer Defendants' actions "in causing physical injury to [Mr. Sable] . . . constituted excessive force." (ECF No. 30 at 13; 15). Article 24 protects one's right to substantive due process and is to be construed *in pari materia* with its federal counterpart. *Dent*, 745 F. Supp. 2d at 661; *Allmond v. Dep't of Health & Mental Hygiene*, 448 Md. 592, 609 (2016). State constitutional provisions such as Article 24 "should be interpreted in the same manner as federal provisions." *Dua v. Comcast Cable of Maryland, Inc.*, 370 Md. 604, 621 (2002). Because "cases concerning a federal constitutional provision are persuasive authority as to a Maryland counterpart," *Allmond*, 448 Md. at 609 (citation omitted), "decisions of the Supreme Court on the Fourteenth Amendment are practically direct authorities' with respect to Article 24 of the Declaration of Rights." *Hargrove v. Bd. of Trs. of Md. Ret. Syst.*, 310 Md. 406, 416 (1987) (citation omitted); *see also Pitsenberger v. Pitsenberger*, 287 Md. 20, 27 (1980) ("Article 24 of the Maryland Declaration of Rights and the Fourteenth Amendment of the United States Constitution have the same meaning, and . . . Supreme Court interpretations of the Fourteenth Amendment function as authority for interpretation of Article 24.").

The Due Process Clause of the Fourteenth Amendment[6] "does not purport to supplant traditional tort law." *Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992) (citation omitted). The Supreme Court has repeatedly rebuffed attempts to do so. *See County of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998) ("[T]he due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority

---

[6] The Due Process Clause of the Fourteenth Amendment provides, "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."

causes harm."); *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 202 (1989) ("[T]he Due Process Clause of the Fourteenth Amendment . . . does not transform every tort committed by a state actor into a constitutional violation.").  Moreover, the Due Process Clause "is phrased as a *limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security*."  *DeShaney*, 489 U.S. at 195 (emphasis added).  While the Fourteenth Amendment "forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,'" the language of the Due Process Clause "cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means." *Id.*

The United States Court of Appeals for the Fourth Circuit, in *Waybright v. Frederick County*, embraced these overarching principles concerning substantive due process and observed that

> the Supreme Court has, for half a century now, marked out executive conduct wrong enough to register on a due process scale as conduct that "shocks the conscience," and nothing less.  The shocks-the-conscience test turns on degree of fault.  For a due process challenge to executive action to succeed, the general rule is that the action must have been "intended to injure in some way unjustifiable by any government interest."  As to "negligently inflicted harm," it is "categorically beneath the threshold of constitutional due process."  And as to "culpability falling within the middle range, following from something more than negligence but less than intentional conduct," the Court has allowed that it may have constitutional implications, but only in special circumstances.  As to what those special circumstances are, the Court has issued no general rule except that judges should proceed with "self-restraint" and "utmost care," and make "an exact analysis" of the circumstances presented "before any abuse of power is condemned as conscience shocking."

528 F.3d 199, 205 (4th Cir. 2008) (citations omitted); *see also Young v. City of Mr. Ranier*, 238 F.3d 567, 574 (4th Cir. 2001).  "[W]here a claim sounds both in state tort law and substantive due process, state tort law is the rule and due process the distinct exception."  *Waybright*, 528 F.3d at

205.  Put another way, there exists a "strong presumption" that "due process claims which overlap state tort law should be rejected."  *Id.*

The inquiry into whether governmental conduct is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience" is a threshold question.  *County of Sacramento*, 523 U.S. at 847 n.8.  To answer that question, *Waybright* is illustrative.  There, a recruit died while training to join the Frederick County, Maryland Fire Department ("FCFD").  528 F.3d at 201.  A FCFD firefighter—Coombe—supervised the outdoor training where recruits ran more than 4 miles, did squats, pushups, other calisthenics, and ran sprints.  *Id.* at 202.  During the July 3, 2002 training session, the temperature rose to eighty-four degrees Fahrenheit, with a heat index that rose to ninety-six degrees.  *Id.*  Coombe did not bring water, communication equipment, transportation or first aid equipment to the training.  *Id.*  Many recruits struggled to complete the exercises; some became disoriented.  *Id.*  As the session concluded, Waybright collapsed.  *Id.*  "He tried to crawl back to the Training Center, saying 'I want to finish with my class,' and was able to get up briefly.  But his legs were shaky and Coombe told him to rest where he was."  *Id.*

A second FCFD firefighter, who was also an emergency medical technician—Eckhardt—watched over Waybright, declined an offer to call 911 from passersby, and did not administer first aid.  *Id.*  Coombe left the scene and directed a third FCFD firefighter—Grossnickle—to get a truck to pick up Waybright.  *Id.*  Waybright lost consciousness shortly thereafter.  *Id.*  Grossnickle, after learning of Waybright's deteriorating condition, returned to the training center, told another firefighter to call 911, and took a paramedic back to Waybright.  *Id.*  Grossnickle looked for medical equipment but could not find any.  *Id.*  Approximately five minutes after collapsing,

Waybright went into cardiac arrest; he was transported to the emergency room where he died approximately one hour later.  *Id.*

The *Waybright* Plaintiffs filed suit alleging a deprivation of substantive due process rights pursuant to 42 U.S.C. § 1983 and Article 24, along with state tort claims.  *Id.*  The Fourth Circuit affirmed that Plaintiffs must overcome the presumption that accompanies due process claims which overlap with tort claims, *supra* at 9, in one of two ways.  *Id.* at 206.  "The most likely path for overcoming the presumption," or proving that defendants intended to harm, was closed, "for under no construction of events could Coombe be said to have intended Waybright's death."  *Id.*  Rejecting negligence as a path to constitutional liability, the *Waybright* Plaintiffs' only other course was through proving deliberate indifference.  *Id.*  Under the facts presented, the Fourth Circuit declined to find that the *Waybright* Defendants were deliberately indifferent to Waybright's right to substantive due process under the "time to deliberate," "special relationship," and "state-created danger" theories.  *See id.* at 206–08.  The Fourth Circuit then concluded that the conduct at issue "is a far cry from shocking the conscience.  It was, rather . . . an under-reaction—that is, a misjudgment. . . . [M]isjudgments such as these are 'categorically beneath the threshold of constitutional due process.'"  *Id.* at 208 (citation omitted).

Returning to the instant case, Plaintiffs offer three unpersuasive reasons that this matter is distinguishable from *Waybright*: (1) "there is evidence to permit a reasonable finder of fact to conclude that Defendants Deitz and Luck intended to injure [Mr. Sable]"; (2) "the training [Mr. Sable] was subjected to was unjustifiable by a government interest"; and (3) "there is evidence sufficient to permit a reasonable finder of fact to conclude that Defendants Deitz and Luck knew that Mr. Sable was in serious danger."  (ECF No. 35-1 at 8–10).

11

Plaintiffs' bald assertions in their Response, that the Officer Defendants intended to injure Mr. Sable, are unsupported by allegations in the Amended Complaint. Vague statements attributable to the on duty lifeguard at the pool, such as "You haven't seen nothing yet, wait til they bring the boat in" do not come remotely close to the type of facts, which taken as true, shock the conscience in a constitutional sense. (ECF No. 35-1 at 8). Further, Plaintiffs' Amended Complaint pleads facts which demonstrate that the training *was* rooted in a justifiable government interest. Mr. Sable enrolled in the program by his own volition to become a member of the York County Quick Response Team. (ECF No. 30 at 2).

Finally, contrary to Plaintiffs assertion, "under no plausible reading of the facts did [the Officer Defendants] even know that [Mr. Sable] was in serious, let alone mortal, danger." *Waybright*, 528 F.3d at 208. Mr. Sable continued with the activities as instructed without ever stopping. Mr. Sable *jogged* around the pool after being observed as "cyanotic in the lips and pale in the face." (ECF No. 30 at 4). When Defendant Officer *did* recognize the seriousness of Mr. Sable's condition, they did not ignore or disregard Mr. Sable. Instead, Mr. Sable was pulled from the pool and patted on the back. (ECF No. 30 at 4). A BCFD medic used a bag valve mask resuscitator, although it was delayed for minutes because of a missing mask. *Id.* at 4–5. BCPD medics further administered epinephrine, performed nineteen minutes of CPR, and transported Mr. Sable to the emergency room. *Id.* at 5.

The Court must consider these facts "*ex ante*, from the perspective of the state official, and ask whether his or her decisions when he or she made them were of a magnitude to shock the conscience." *Waybright*, 528 F.3d at 209. "Instruction that seems overzealous, and precautions that seem insufficient," fall short of the conscience-shocking conduct that is required. *Id.* The Officer Defendants' actions simply fail to show that the Officer Defendants possessed an intent to

injure or were deliberately indifferent to Mr. Sable's rights. Much like in *Waybright*, the Officer Defendants' conduct may be said to be an "under-reaction," but such misjudgment is "categorically beneath the threshold of constitutional due process." *Id.* at 208.

Accordingly, Defendants' Motion to Dismiss as to all counts based on Articles 19, 24, and 26 of the Maryland Declaration of Rights (Counts V, VI) is hereby **GRANTED without prejudice**.

### 2. *State Law Tort Claims.*

Having resolved the constitutional claims, the Court will now address the remaining state law tort claims against the Officer Defendants: Survival Action – Negligence (Counts III, IV) and Wrongful Death – Negligence (Counts X, XI, XIV, XV, XVIII, XIX, XXII, and XXIII). However, the Court must first consider Defendants' claim of immunity under Maryland law.

The Officer Defendants assert that they are immune from suit under two theories. (ECF No. 31-2 at 14). They contend that, to the extent they acted as emergency medics, they enjoy immunity pursuant to Maryland Code ("Md. Code"), Courts and Judicial Proceedings Article ("CJ") § 5-603.[7] *Id.* Alternatively, the Officer Defendants argue that they are entitled to public official immunity for "all claims rooted in negligence." *Id.* at 18.[8] Plaintiffs' respond that the

---

[7] CJ § 5-603(a) provides that one

> is not civilly liable for any act or omission in giving any assistance or medical care, if:
> > (1) The act or omission is not one of gross negligence;
> > (2) The assistance or medical care is provided without fee or other compensation; and
> > (3) The assistance or medical care is provided:
> > > (i) At the scene of an emergency;
> > > (ii) In transit to a medical facility; or
> > > (iii) Through communications with personnel providing emergency assistance.

As applicable here, Defendants direct the Court's attention to the provision applying this immunity to "[a] member of any . . . county . . . law enforcement agency" who is "certified or licensed by this State as an emergency medical services provider." CJ §5-603(b)(2)(iii).

[8] Defendants assert common law public official immunity. The Court notes that statutory public official immunity is codified at Md. Code, CJ § 5-522.

Officer Defendants should not stand because the Officer Defendants engaged in ministerial, as opposed to discretionary, acts. (ECF No. 16–17). Because the Court will find that the Officer Defendants are entitled to public official immunity under CJ § 5-522, it will refrain from addressing the merits of CJ § 5-603 immunity.

Under the Maryland Tort Claims Act ("MCTA")[9] and CJ § 5–222(b),[10] state personnel are immune from liability in tort for an act or omission that is within the scope of their public duties and is made without malice or gross negligence. Specifically, "a sheriff or deputy sheriff of a county" qualifies as "state personnel" within the ambit of CJ § 5-222(b). Md. Code, State Government ("SG") Article § 12-101(a)(6).

Public official immunity applies only where the public official is engaged in discretionary, not ministerial, acts. *James v. Prince George's County*, 288 Md. 315, 323 (1980). Discretion, as the term would imply,

> denotes freedom to act according to one's judgment in the absence of a hard and fast rule. When applied to public officials, "discretion" is the power conferred upon them by law to act officially under certain circumstances according to the dictates of their own judgment and conscience and uncontrolled by the judgment or conscience of others.

*Livesay v. Baltimore County*, 384 Md. 1, 41 (2004) (citation and quotation marks omitted). Ministerial, to the contrary, refer to acts in which "nothing is left to [the official's] discretion." *Id.* (citation omitted).

Whether a complaint has sufficiently alleged malice to defeat the defense of public official immunity is a question of law. *Shoemaker v. Smith*, 353 Md. 143, 167 (1999). To overcome public

---

[9] Maryland Code, State Government Article § 12-101 *et seq.*

[10] "State personnel, as defined in § 12-101 of the State Government Article, are immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence, and for which the State or its units have waived immunity under Title 12, Subtitle 1 of the State Government Article, even if the damages exceed the limits of that waiver." CJ § 5-522(b).

official immunity, Plaintiffs must point to facts sufficient to raise an inference of malice, and these allegations must allege with "some clarity and precision those facts which make the act malicious." *Thacker v. City of Hyattsville*, 135 Md. App. 268, 301 (2000). For purposes of CJ § 5-222(b) immunity, malice means "actual malice" which is characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill will, or fraud. *Estate of Saylor v. Regal Cinemas, Inc.*, 54 F. Supp. 3d 409, 422 (D. Md. 2014); *see also Williams v. Mayor & City Council of Baltimore*, 359 Md. 101, 131 n.16 (2000) (characterizing malice as "an evil or rancorous motive influenced by hate, the purpose being to deliberately and [willfully] injure the plaintiff") (citation omitted). "[G]ross negligence is found when a State employee is so 'utterly indifferent to the rights of others that he acts as if such rights did not exist.'" *Murphy-Taylor v. Hofmann*, 968 F. Supp. 2d 693, 739 (D. Md. 2013) (citation omitted). Put simply, where a plaintiff "*sufficiently* alleges malice or gross negligence," immunity does not attach. *Barbre v. Pope*, 402 Md. 157, 181–82 (2007) (emphasis in original).

There is no dispute that Officers Dietz and Luck are public officials. (ECF Nos. 31-2 at 19; 35-1 at 18). While Plaintiffs contend Defendants actions constitute ministerial acts, this Court finds that the Officer Defendants actions as alleged are clearly discretionary. The Officer Defendants exercised "judgment in the absence of a hard and fast rule" in supervising, implementing, and responding to the events that unfolded at the SWAT aquatic training exercise. *See Livesay*, 384 Md. at 41. Even assuming for sake of argument that the Officer Defendants' acts were ministerial in nature, the Amended Complaint falls woefully short of sufficiently alleging malice or gross negligence. Indeed, Plaintiffs make no allegations of malice whatsoever. Plaintiffs likewise fail to allege facts that, if taken as true, would constitute *gross* negligence. Each of Plaintiffs' counts against the Officer Defendants sounding in negligence provides as follows:

> The employees of Defendant [Baltimore County], including but not limited to Officer [Dietz or Luck], were *negligent* when they failed to recognize that Mr. Sable was unfit to continue the water exercises prior to his injury; when they failed to recognize that Mr. Sable was in severe physical distress during the water exercises prior to his injury; when they failed to remove Mr. Sable from the pool prior to his injury; when they failed to administer proper medical care to Mr. Sable after his injury; when they failed to provide proper medical equipment to treat Mr. Sable after his injury. Officer [Dietz or Luck] may have been *negligent* in other ways.

ECF No. 30 at 10, 12, 23, 25, 31–32, 33, 40, 42, 48–49, 50–51 (emphasis added). Such allegations, which may rise to the level of ordinary negligence—i.e., a failure to act reasonably—do not defeat the Officer Defendants' assertion of public official immunity. Nothing in Plaintiffs allegations show facts that the Officer Defendants were utterly indifferent to Mr. Sable's rights as if Mr. Sable's rights did not exist. To the contrary, the Amended Complaint alleges that Officer Luck accompanied Mr. Sable as he completed the exercises, and Officer Dietz "rendered medical assistance to Mr. Sable" after Mr. Sable was removed from the pool. (ECF No. 30 at 4); *supra* at 12. The Officer Defendants, on the facts alleged, cannot be said to have acted in a manner "so utterly indifferent to the rights of [Mr. Sable] . . . as if such rights did not exist," where the Officer Defendants promptly rendered aid and assistance in an attempt to save Mr. Sable. *See Murphy-Taylor*, 968 F. Supp. 2d at 739.

Accordingly, the Court agrees with the Officer Defendants that they are immune from liability for state common law torts, making dismissal of Counts III, IV, X, XI, XIV, XV, XVIII, XIX, XXII, and XXIII without prejudice, appropriate.

### B.    Counts Against Baltimore County

Against the County,[11] Plaintiffs' Amended Complaint asserts seven total claims: Survival Action – Negligence (Count I); Survival Action – Failure to Train (Count VII); Wrongful Death

---

[11] Given the disposition of Plaintiffs' claims against the Officer Defendants, the analysis would ordinarily end here. However, the Court will consider Plaintiffs' claims vis-à-vis the County because it grants Defendants' Motion without prejudice.

Negligence (Counts VIII, XII, XVI, and XX); and Respondeat Superior (XXIV). The County invokes sovereign immunity and asserts that it enjoys the same immunities afforded to the Officer Defendants. (ECF No. 31-2 at 20–22). For reasons explained *supra*, Plaintiffs' response—that the Officer Defendants are not entitled to CJ § 5-522 or CJ § 5-603 immunity—carries no weight. (ECF No. 35-1 at 18–19). To the extent that Plaintiffs seeks to sue the County by asserting state law claims against the Officer Defendants, those claims are barred by the doctrine of sovereign immunity. *See Balt. Police Dep't v. Cherkes*, 140 Md. App. 282, 313 (2001).

The Local Government Tort Claims Act ("LGTCA")[12] requires that the County "provide for its employees a legal defense in any action that alleges damages resulting from tortious acts or omissions committed by an employee within the scope of employment with the local government." CJ § 5-302(a). Local governments must also, subject to certain monetary limitations, satisfy judgments rendered against its employees for tortious acts or omissions committed by the employee within the scope of employment. CJ § 5-303(b)(1). Notably, the LGTCA permits a local government to "assert on its own behalf any common law or statutory defense or immunity in existence as of June 30, 1987, and possessed by its employee for whose tortious act or omission the claim against the local government is premised." CJ § 5-303(e).

This Court's determination that the Officer Defendants enjoy public official immunity extends to the County. Accordingly, Defendants' Motion to Dismiss as to Counts I, VIII, XII, XVI, XX and XXIV is **GRANTED without prejudice**.

This leaves Plaintiffs' Failure to Train claim (Count VII) to be resolved. Plaintiffs allege that the County's failure to train its employees deprived Mr. Sable of a substantive right to due process arising under the Maryland Declaration of Rights. (ECF No. 30 at 17).

---

[12] CJ § 5-301 *et seq.*

This Court has previously scrutinized failure to train claims arising under the Maryland Declaration of Rights in the same manner as those claims arising under 42 U.S.C. § 1983.  *See Drewry v. Stevenson*, 2010 WL 93268 at *4 (D. Md. 2010) (analyzing § 1983 and Article 24 and 26 failure to train claims under the same analytical framework).  For liability to attach under this theory, however, the failure to train must "amount[] to deliberate indifference to the rights of persons with whom the police come into contact."  *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  The local government's failure to train must be a "deliberate" or "conscious" choice to give rise to liability.  *Id.* (quoting *City of Canton*, 489 U.S. at 389).  The *Drewry* Court continued,

> That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [the local government], for the officer's shortcomings may have resulted from factors other than a faulty training program.  Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct.

*Drewry*, 2010 WL 93268 at *4 (citations and quotation marks omitted, alteration in original).

Plaintiffs' complaint alleges that the County failed to properly train its employees to recognize unfitness to complete "water exercises," "severe physical distress," and "when [Mr. Sable] should be removed from the pool prior to an injury."  (ECF No. 30 at 16).  Plaintiffs further allege that the County failed to train its employees in "how to administer proper medical care" and "how to provide proper medical equipment to treat a trainee."  *Id.*  Such allegations, without more, fail to meaningfully engage facts, that taken as true would show "(1) the nature of the training of sheriff's officers by the County, (2) that any failure to train was a 'deliberate or conscious' choice by the County, or (3) that [the Officer Defendants'] conduct was caused by a failure to train." *Drewry*, 2010 WL 93268 at *4.

It follows, then, that Plaintiffs' Amended Complaint does not allege facts that would establish the County's liability under a failure to train theory arising under the Maryland Declaration of Rights.  Accordingly, Defendants' Motion to Dismiss Count VII is **GRANTED without prejudice**.

## IV.    CONCLUSION

Given the lenient standard of Federal Rule of Civil Procedure 15—that "the court should freely give leave when justice so requires"—the Court will dismiss Plaintiffs' Amended Complaint without prejudice and afford Plaintiffs the ability to amend their complaint.  Fed. R. Civ. P. 15(a)(2).  Plaintiffs' prior amendments (ECF No. 27-2) functioned to add an additional defendant and claims to the complaint.  Because the instant motion is the first test of the adequacy of Plaintiffs' complaint, Plaintiffs shall have one additional opportunity to amend.  If desired, Plaintiffs shall file another amended complaint within thirty (30) days of this opinion.  Accordingly, for the foregoing reasons:

1.  Defendants' Motion to Dismiss Plaintiffs' Complaint (ECF No. 22) is **DENIED as MOOT**.

2.  Defendant's Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 31) is **GRANTED without prejudice**.


A separate order will follow.

Date: February 22, 2021                          _____/s/_____
                                         J. Mark Coulson
                                         United States Magistrate Judge