IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| REBECA SABLE, *et al.*, | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No.: 1:20-cv-00557-JMC |
| BALTIMORE COUNTY GOVERNMENT, *et al.*, | * | |
| | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM OPINION</u>**

This suit, brought by Rebeca Sable, Ethan Sable, Annabel Sable, and Elaina Sable (collectively, "Plaintiffs"), arises from fatal injuries sustained by Alex Sable ("Decedent" or "Mr. Sable") during a SWAT aquatics training course which took place at the Community College of Baltimore County ("CCBC") and was conducted by the Baltimore County Police Department ("BCPD").  (ECF No. 45).  The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c) and Local Rule 301.4.  (ECF No. 12).

Relevant to the issues at hand, Plaintiffs initially filed suit against officers of the Baltimore County Police Department ("Defendant Officers") and the Baltimore County Government ("the County").  (ECF No. 3).   Plaintiffs subsequently amended their Complaint, naming CCBC as an additional Defendant.  (ECF No. 30).  By Memorandum Opinion and Order dated February 22, 2021, this Court dismissed Defendant Officers and the County, and granted Plaintiffs leave to file an amended complaint.  (ECF No. 40 at 19).  Accordingly, Plaintiffs filed the operative Third Amended Complaint, eliminating CCBC as a Defendant, and instead asserting claims against

Defendant Board of Trustees of the Community College of Baltimore County ("Board of Trustees" or "Board" or "Defendant").  (ECF No. 45).

Presently before the Court is the Board of Trustees' Motion to Dismiss Plaintiffs' Third Amended Complaint.  (ECF No. 47).  Plaintiffs filed an Opposition, (ECF No. 48), and Defendant has filed a Reply.  (ECF No. 51).  The issues have been fully briefed and no hearing is necessary to resolve this motion.  *See* Local Rule 105.6.  For the reasons more fully explained below, Defendant's Second Motion to Dismiss Plaintiff's Third Amended Complaint, (ECF No. 47), is **GRANTED**.

## I.    BACKGROUND

### A.    *Underlying Factual Background*

According to the Third Amended Complaint, on May 6, 2018, Mr. Sable took part in a SWAT aquatic training exercise in Baltimore County, Maryland.  (ECF No. 45 at 2).  The BCPD Tactical Team facilitated the program at the Community College of Baltimore County ("CCBC") campus.  *Id.*  Mr. Sable, a York City, Pennsylvania police officer, participated in the program because he sought to become part of the York County Quick Response Team.  *Id.*  BCPD took responsibility for patient care during the event and provided medical equipment, medics, lifeguards, and staff to attend to the health of the participants.  *Id.* at 3.  The Baltimore County Fire Department ("BCFD") was stationed on scene for patient transportation as needed.  *Id.*

Pursuant to the training, Mr. Sable and other participants completed a series of physically demanding exercises in and out of the pool.  *Id.*  Among these exercises, program facilitators instructed Mr. Sable—while clothed in a long-sleeved shirt, pants and boots—to hold a ten-pound weight on his shoulders and tread water for two minutes.  *Id.* at 4.  Observers witnessed Mr. Sable struggle to remain above water.  *Id.*  And, when Mr. Sable exited the pool, a BCFD transport unit

medic ("Medic Sloman") noted that Mr. Sable's lips appeared cyanotic and his face pale. *Id.* Nonetheless, Mr. Sable was instructed to jog around the pool. BCPD Officer Demetris Luck ("Officer Luck"), a medic, jogged alongside Mr. Sable. *Id.*

As the training neared its conclusion, program facilitators instructed the participants to tread water for ten minutes. *Id.* During this exercise, Mr. Sable went underwater and remained there for approximately ten seconds before being removed from the pool. *Id.* Once on the pool deck, BCPD Officer Sean Dietz ("Officer Dietz"), another medic, rendered assistance by patting Mr. Sable on the back and instructing him to "cough it up." *Id.* Medic Sloman "observed Mr. Sable to be cyanotic in the face, with fluid coming from his mouth, without a pulse, and apneic." *Id.* BCPD medics provided Medic Sloman with a bag valve mask manual resuscitator and O2 bottle to being treating Mr. Sable, but the mask was missing from the unit. *Id.* at 5. For this reason, the manual resuscitator was inoperable for several additional minutes while medics searched for, and eventually obtained, a mask. *Id*. BCPD medics provided Mr. Sable with additional medical treatment, including the administration of five milligrams of epinephrine. *Id.*

Mr. Sable was then transported by ambulance to Johns Hopkins Bayview Medical Center ("Bayview"). *Id.* Mr. Sable's cardiac activity was re-established after nineteen minutes of CPR and seven doses of epinephrine. *Id.* Upon arrival at Bayview's emergency department, Mr. Sable's heart rate was recorded as 106 BPM and his blood pressure was recorded as 218/34. *Id.* As a result, Mr. Sable was diagnosed with cardiac arrest. *Id.* Three days later, on May 9, 2018, Mr. Sable died as a result of cardiac arrhythmia. *Id.*

### B.   *The Memorandum of Understanding*

On June 26, 2014, representatives from CCBC, the Baltimore County Police Department, and the County executed the Memorandum of Understanding ("MOU") at issue. (ECF No. 43-4).

The MOU outlined the relationship between the BCPD and CCBC and discussed the use of CCBC

facilities for BCPD training and education.  In pertinent part, the MOU provided:

> 4.  COURSES OF STUDY.  The CCBC Dean of the School of Business, Criminal
> Justice and Law and the [BCPD] Academy Commander will mutually agree upon
> the appropriate faculty to instruct the courses of study as set forth in Attachment A
> of this MOU.
>
> 5.  FACULTY REPLACEMENT AND DISPUTE RESOLUTION.  Instructors of
> the courses of study as set forth in Attachment A of this MOU may be replaced
> upon the request of either party . . . . Should the instructor be a [BCPD] Officer, the
> Chief of [BCPD] shall make the final decision. Should the instructor be a faculty
> member of CCBC, the Dean of the School of Business, Criminal Justice and Law,
> shall make the final decision.
>
> 6.  INSTRUCTIONAL SUPPORT.  CCBC will provide up to fifty thousand dollars
> ($50,000) in instructional support to the [BCPD] in accordance with the guidelines
> set forth in Attachment B of this MOU.
>
> 7.  ANNUAL BALTIMORE COUNTY APPROPRIATION. . . . [T]wo hundred
> thousand dollars ($200,000) of the annual Baltimore County appropriation to the
> college is designated to support these instructional activities and related services.
>
> *  *  *
>
> 9.  BALTIMORE COUNTY POLICE ACADEMY INSTRUCTORS.  All
> instructors assigned to the training academy responsible for credit related [training]
> must fill out a CCBC instructor application to become an associate instructor.
>
> *  *  *
>
> 18.  USE OF FACILITIES.  CCBC shall make available all Health, Fitness and
> Athletic Center facilities and services on the Dundalk Campus to all recruits,
> students and Academy staff of [BCPD].
>
> *  *  *
>
> 22.  IMMUNITIES.  Each party waives all claims against the other party for
> compensation of any loss, damage, personal injury or death occurring as a
> consequence of performance of this MOU . . . In no event shall the [BCPD] be
> liable for any workers compensation or employment claims or benefits of any kind
> of any employee, agent, officer or otherwise employed individual of the CCBC . . . .

In no event shall the CCBC be liable for any workers compensation or employment claims or benefits of any kind of employee, agent, officer or otherwise employed individual of the [BCPD].

(ECF No. 43-4 at 2–4).

## II.    STANDARD OF REVIEW

Defendant's Motion is predicated on Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 47 at 4).  The purpose of Federal Rule of Civil Procedure 12(b)(6) "is to test the sufficiency of a complaint and 'not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'"  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).  A Rule 12(b)(6) motion "constitutes an assertion by a defendant that, even if the facts alleged by plaintiff are true, the complaint fails as a matter of law, to state a claim upon which relief can be granted."  *Jones v. Chapman*, 2015 WL 4509871, at *5 (D. Md. July 24, 2015).

In resolving a motion under Rule 12(b)(6), a court considers matters only within the pleadings.  Whether a complaint states a claim for relief is assessed in accordance with the pleading requirements of FRCP 8(a)(2).  To survive a Rule 12(b)(6) motion to dismiss, "detailed factual allegations are not required, but a 'plaintiff must provide the grounds of his entitlement to relief' and this requires 'more than labels and conclusions, or a formulaic recitation of the elements of a cause of action.'"  *Petry v. Wells Fargo Bank, N.A.*, 597 F. Supp. 2d 558, 561–62 (D. Md. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)).  In reviewing a Rule 12(b)(6) motion to dismiss, "the Court must accept the complaint's allegations as true, and must liberally construe the complaint as a whole."  *Humphrey v. National Flood Ins. Program*, 885 F. Supp. 133, 136 (D. Md. 1995).  Further, the Court must draw all reasonable inferences "derived therefrom in

the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

"[C]ourts are generally limited to considering the sufficiency of allegations set forth in the complaint and the documents attached or incorporated into the complaint" when analyzing a Rule 12(b)(6) motion. *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (internal citations omitted). If a party presents matters outside of the pleadings, the motion is generally treated as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). However, "a court may rely on extrinsic materials to determine a motion to dismiss without converting the proceeding into a motion for summary judgment." *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). Specifically, a court may properly consider extrinsic documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (internal citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *In re Dubois*, 834 F.3d 522, 525 n.2 (4th Cir. 2016); *Simmons v. Balt. City Police Dept.*, CV RDB-21-0969, 2021 WL 3418840, at *8 (D. Md. Aug. 5, 2021).

"[B]efore treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167. "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff had adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Id.* Alternatively, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

### III.    DISCUSSION

Plaintiffs' Third Amended Complaint advances eight claims against Defendant: Count I: Survival Action – Negligence; Count II: Survival Action – Negligent Supervision; Count III: Survival Action – Failure to Train; Counts IV, V, VI, VII: Wrongful Death – Negligence; and Count VIII – Respondeat Superior.  Plaintiffs' claims in their Third Amended Complaint rely heavily on the MOU executed between the County and CCBC.  As a preliminary matter, the Court notes that it will consider the MOU without converting Defendant's Motion to Dismiss to one for summary judgment.  *See Goines*, 822 F.3d at 166 (noting that documents "explicitly incorporated . . . by reference" throughout a complaint and previously attached as an exhibit may be considered, in addition to the pleadings, without converting a motion to dismiss into a motion for summary judgment).  Here, the MOU was explicitly incorporated by reference numerous times throughout Plaintiffs' Third Amended Complaint, and the MOU was attached to Plaintiffs' Motion for Leave to File the Third Amended Complaint.  (ECF No. 43, Ex. 4; ECF No. 45).  Crediting the MOU is appropriate given that both parties rely on it at length and the Amended Complaint is based almost entirely on Plaintiffs' interpretation of the document.

In its own interpretation of the MOU, Defendant's Motion to Dismiss seeks to dispose of all eight Counts, chiefly raising two challenges to Plaintiffs' Third Amended Complaint.  First, Defendant argues that the MOU between the County and CCBC did not create *respondeat superior* liability between the Board of Trustees and the BCPD training staff and medics.  *Id.* at 6. Therefore, because Plaintiffs premised Defendant's liability in each count on *respondeat superior* liability, Defendant alleges that the Board of Trustees may not be held vicariously liable for the death of Mr. Sable.  *Id.*  Second, in the alternative, Defendant argues that even if the Amended Complaint properly named the Board of Trustees as a Defendant, the Complaint nonetheless fails

to allege a factual basis for vicarious liability. *Id.* at 13. Specifically, Defendant claims that the Amended Complaint failed to identify a specific member of the Board of Trustees who committed a tort that would thus make the Board vicariously liable. *Id.*   Instead, Defendant argues that Plaintiffs merely hope to hold the Board of Trustees vicariously liable because the incident occurred on the Board of Trustees' property, and that this is not a sufficient factual basis for tort liability. *Id.* at 14.

Defendant accurately highlights that each of Plaintiffs' negligence claims rely upon a finding of vicarious liability. Therefore, the Court must make a threshold determination about whether the Board of Trustees can be held vicariously liable for accusations in Plaintiffs' Third Amended Complaint.

### A.  *Respondeat Superior is Not Applicable*

Plaintiffs ground their claims under the guise that the medics and officers at the SWAT tactical training were agents, servants, and/or employees of CCBC and, consequently, agents, servants, and/or employees of the Board of Trustees. Plaintiffs further assert that the medics and officers were negligent in their medical assistance and training. (ECF No. 45). Linking the two assertions, Plaintiffs seek to hold the Board of Trustees vicariously liable for the alleged negligence of the medics and officers as agents, servants, and/or employees of the Board.

This Court traditionally considers, and both parties attest to the applicability of, five factors in evaluating whether an employer-employee relationship exists between two parties: "(1) the power to select and hire the employee, (2) the payment of wages, (3) the power to discharge, (4) the power to control the employee's conduct, and (5) whether the work is part of the regular business of the employer." *Mut. Benefit Ins. Co. v. R. Gates Constr. Co.*, 503 F. Supp. 3d 344, 354 (D. Md. 2020) (citing *Whitehead v. Safway Steel Prods., Inc.*, 497 A.2d 803, 808–09 (Md.

1985)).  Satisfying all five factors is not necessary, but "[o]f the five factors, the factor of control stands out as the most important."  *Id.* (internal citation omitted).  Plaintiffs argue that the factor analysis is unnecessary, as the MOU "unambiguously affirms that the BCoPD academy staff present at CCBC's aquatic facility at the time of Decedent Officer Sable's death were CCBC associate instructors."  (ECF No. 48, Ex. 1 at 11).  Alternatively, Plaintiffs argue that application of the five-factor analysis nonetheless favors a finding of an employer-employee relationship.  *Id.* at 12.  Conversely, Defendant contends "there was no employment relationship between BCPD and the Board of Trustees for the training program that is the subject matter of this litigation." (ECF No. 47, Ex. 1 at 8).

Plaintiffs' first argument fails to convince the Court that the MOU "unambiguously" demonstrates that the staff at the aquatics training were Board of Trustee's employees.  Plaintiffs do not point to specific language in the contract expressly categorizing BCPD staff as employees of the Board of Trustees.  Instead, Plaintiffs make the blanket assertion that the MOU "affirms" an employer-employee relationship.  Therefore, the Court is left to its own general interpretation of the MOU to address Plaintiffs' first argument.  Simply put, no specific language in the MOU clearly creates the requisite relationship to establish an employer-employee relationship.  Notably, unlike in their first argument, Plaintiffs raise specific examples and inferences in applying the five-factor analysis.  Consequently, the Court rejects Plaintiffs' first argument and will similarly apply the five-factor analysis to determine whether an employer-employee relationship existed between the Board and BCPD.

### i.      The Power to Select and Hire the Employee

The first factor in the analysis shows that the Board did not have the power to select and hire BCPD personnel for the SWAT training.  Plaintiffs' Third Amended Complaint does not

advance facts indicating that the Board had the power to select and hire the BCPD police officers and medics. Defendant's Motion to Dismiss argues that CCBC and the Board of Trustees retained no authority to select or hire the BCPD trainers and medics because "[t]he SWAT training course is not a college credit course listed in Attachment A" of the MOU. (ECF No. 47, Ex. 1 at 11–12). Instead, "the selection of trainers and medics to conduct the SWAT training course is exclusively the prerogative of the Commander of the Training Academy and ultimately the authority of the Chief of the BCPD." *Id.* Plaintiffs counter that "CCBC had a role in determining the appropriateness of the proposed [BCPD] faculty" and, therefore, had the power to select and hire the BCPD police officers and medics. (ECF No. 48 at 13). Specifically, Plaintiffs assert that Defendant "effectively ha[s] veto power concerning [the hiring of] any [BCPD] trainer" because the trainer must be mutually agreed upon under the above language of the MOU. *Id.* Moreover, Plaintiffs claim that Defendant retained the power to replace the BCPD police officers and medics because "[t]he MOU also states that '[i]nstructors of the courses of study as set forth in Attachment A . . . may be replaced upon the request of either party [CCBC or BCPD].'" *Id.*

The Court finds that this factor weighs in favor of Defendant. Paragraph four of the MOU illustrates that Defendant did not have the ultimate authority to hire the BCPD trainers and medics for the SWAT training. Paragraph four states that "[t]he CCBC Dean of the School of Business, Criminal Justice and Law and the [BCPD] Academy Commander will mutually agree upon the appropriate faculty to instruct the courses of study *as set forth in attachment A of this MOU*." (ECF No. 43-4 at 2) (emphasis added). Attachment A then lists the various courses that relate to this provision.[1] The SWAT training course is not identified in that list. *Id.* at 8. Nor is the SWAT

---

[1] Attachment A to the MOU provides that "CCBC will provide instruction with full-time, adjunct, and associate faculty for the following credit courses": Introduction to Criminal Justice; Criminal Investigation; Narcotics and Dangerous Drugs, Criminal Law; Criminal Justice and the Constitution; Vehicle Law and Accident Investigation; Law Enforcement and the Community; Criminal Procedure and Evidence; Juvenile Delinquency; Ethics and Diversity

training course described anywhere else in the MOU as falling within the scope of the MOU. Defendant may have a say in selecting certain BCPD staff, and the accompanying power to veto the selection of such staff, for the instruction of academic college courses at CCBC, but this authority does not extend to the specific SWAT training at issue here.

ii.    *The Payment of Wages*

The second factor—the payment of wages—also weighs in favor of Defendant. Plaintiffs' Third Amended Complaint is silent as to wage payment. Defendant asserts that "[t]he MOU is void of any monetary compensation to BCPD associate instructors or the trainers and medics for BCPD conducting the SWAT training." (ECF No. 47 at 12–13). Moreover, Defendant reiterates that "the SWAT training was not a college credit course that required CCBC associate instructors," and that "there is no employee/employer relationship between the Board of Trustees and BCPD's trainers and medics based on compensation of any type." *Id.* at 13. In response, Plaintiffs concede that "[t]he MOU is void of any term that provides for the payment of wages by the Board of Trustees to BCPD trainers and medics." (ECF No. 48 at 14) (internal citation omitted). However, Plaintiffs contend that "a determination regarding any wage payments is premature" because there is ongoing discovery regarding how the annual appropriations between CCBC and the BCPD are specifically allocated. *Id.* at 14–15.

Plaintiffs have not alleged facts that, if taken as true, indicate Defendant paid the BCPD's wages for work related to the SWAT training. Plaintiff's general assertion that discovery is ongoing is insufficient to withstand a motion to dismiss. While Plaintiffs' complaint does not require "detailed factual allegations," it "must provide the grounds of [Plaintiffs'] entitlement to relief." *Petry*, 597 F. Supp. 2d at 561–62 (quoting *Bell Atlantic Corp.*, 550 U.S. at 545). As to

---

in Criminal Justice; First Aid and Personal Safety; Lifetime Fitness and Wellness; Firearms Handling and Shooting Safety; Self Defense I; Self Defense II; and Criminal Justice Internship. (ECF No. 43-4 at 8).

this factor, supporting facts are lacking.  Although the MOU describes the annual appropriations made by Defendant for BCPD training, there is no indication in the MOU or elsewhere that these appropriations contribute to the wages of the BCPD trainers and medics.  Rather, the MOU explicitly states that the appropriations are provided for "instructional support."  (ECF No. 43, Ex. 4 at 2).  The lack of indication that Defendant provides any monetary payments to BCPD employees in the form of wages, rather than broad annual appropriations for the Department as a whole, tips this factor in Defendant's favor.

iii.     *The Power of Discharge*

Third, the Court considers Defendant's power to discharge the BCPD personnel.  Plaintiffs' Third Amended Complaint does not allege facts relevant to the power of discharge.  Defendant argues that the authority to dismiss the BCPD trainers and medics ultimately belongs to the Chief of BCPD, and that the Chief of BCPD makes the final decisions regarding any BCPD trainer or medic's employment.  (ECF No. 47 at 11).  Plaintiffs implicate paragraph five of the MOU in their Opposition and respond that Defendant retains the ability to discharge the BCPD instructional staff because the MOU indicates that "[BCPD] instructors may be replaced upon the request of *either* party."  (ECF No. 48 at 15).  Plaintiffs assert that, "at the very least," BCPD personnel that Defendant object to hiring "would be subjected to additional evaluation by the Chief of [BCPD] prior to replacement."  *Id.*

A review of the complete MOU provision demonstrates fault in Plaintiffs' argument.  First, paragraph five provides that "[i]nstructors of the courses of study . . . *set forth in Attachment A* of this MOU may be replaced upon the request of either party."  (ECF No. 43-4 at 2) (emphasis added).  As described above, the SWAT training is not listed in Attachment A, and therefore is not subject to the replacement procedures governed by paragraph five.  Nevertheless, even assuming

12

the BCPD trainers and medics involved in the SWAT training *were* subject to further evaluation if Defendant objected to their employment, the MOU provides that "the Chief of [BCPD] shall make the final decision" regarding the termination of any BCPD instructor. *Id.* Defendant can, at most, *recommend* that a BCPD instructor of a for-credit course listed in Attachment A be discharged, but does not retain the actual authority to do so—such authority solely belongs to the Chief of BCPD. Defendant may only make a final decision as to faculty replacement where an instructor is a faculty member of CCBC. (ECF No. 43-4 at 2). Therefore, under the express language of the MOU, Defendant did not have the power to discharge BCPD personnel, and this factor weighs in Defendant's favor.

iv.       *The Power to Control an Employee's Conduct*

Defendant's power to control the BCPD staff's conduct is the most important factor in determining whether an employer-employee relationship exists. *See Hardison v. Healthcare Training Sols., LLC.*, Civ. No. PWG-15-3287, 2017 WL 2276840, at *3 (D. Md. May 25, 2017) ("[T]he power to control the employee's conduct is the most important factor, with the power to select and hire the employee, . . . the payment of wages, . . . the power to discharge, . . . and whether the work is part of the regular business of the employer being secondary.") (internal quotations omitted). Here, Defendant lacked meaningful control over the conduct of the BCPD personnel.

Aside from blanket statements indicating that the medics and officers were "at all times employees, agents, or assignees, either actual or apparent, of Defendant Board of Trustees" (ECF No. 45 at 6), Plaintiffs' Third Amended Complaint does not plead facts to support that the Board controlled the medics or officers. Defendant contends that the Board of Trustees "had no control over the course of conduct chosen by the BCPD trainers and medics to conduct the SWAT

13

training." (ECF No. 47 at 10). More specifically, Defendant suggests that it "merely provided the facility, not the criteria, for the BCPD trainers and medics to conduct the training according to their own judgment." *Id.* In its Opposition, Plaintiffs argue that Defendant had meaningful control over the conduct of Officers Dietz and Luck, among others, because Defendant "provided [the officers] with access to its aquatic facilities, and permitted [the officers] to use the aquatic facilities to train recruits and trainees, including Decedent Officer Sable." (ECF No. 48 at 16). The crux of Plaintiffs' claim is that Defendant had the power to control whether the training occurred in the first place, and therefore had the power to control the conduct of the BCPD officers more broadly.

Plaintiffs' assertion that Defendant's control over the physical facilities confers control over the BCPD personnel therein is a bridge too far. Paragraph 18 provides that "CCBC shall make available all Health, Fitness, and Athletic Center facilities and services on the Dundalk Campus to all recruits, students and Academy staff of [BCPD]." (ECF No. 43-4 at 4). However, the MOU falls short of indicating that Defendant can oversee the BCPD activities and training that occur within CCBC facilities. On this point, the Court of Appeals' recent decision in *Tyson Farms Inc. v. Uninsured Employers' Fund*, is instructive. 471 Md. 338 (2020). There, the Court of Appeals determined that "regulation of the workplace"—i.e., the physical facility—"does not equate to, or automatically mean" an employer "had the power to control [an individual's] conduct" sufficient to show an employer-employee relationship. *Id.* at 418. Applying the same rationale here, it follows that Defendant's agreement to provide BCPD access to its facilities does not grant Defendant the ability to dictate or control how those trainings are conducted. Accordingly, this Court concludes that Defendant did not have the power to control BCPD personnel.

      *v.*      *Whether the Work is Part of the Regular Business of the Employer*

The fifth and final factor the Court must consider in analyzing whether an employer-employee relationship exists is whether the work is part of the regular business of the employer. Plaintiffs' Complaint alleges that the SWAT trainings fall within the regular business of Defendant because Defendant assists the BCPD in training its officers by granting them access to the CCBC facilities. (ECF No. 45 at 6; ECF No. 48 at 18). This argument fails for similar reasons as those described above. Although Defendant may regularly grant the BCPD access to the CCBC facilities for training purposes, Defendant itself does not conduct the trainings, and does not exercise any control over how the trainings are conducted. These are the functions of the BCPD, and only the BCPD. Additionally, as previously explained, the specific SWAT training falls outside the scope of the courses subject to the terms of the MOU. Therefore, conducting SWAT trainings is not part of the regular work of Defendant, and this factor weighs in favor of Defendant.

Plaintiffs' pleadings do not provide "more than labels and conclusions" to support a finding of an employee/employer relationship to provide a foundation for *respondeat superior*. *Petry*, 597 F. Supp. 2d 558, 561–62 (D. Md. 2009) (quoting *Twombly*, 550 U.S. at 545). Without this foundation, the Board cannot be subject to vicarious liability. Because Counts I-VII rest on a theory of negligence on behalf of the medics and officers, and Count VIII centers on *respondeat superior* specifically, absent a finding of vicarious liability or direct negligence from the Board itself, Plaintiffs' Third Amended Complaint fails "to state a claim upon which relief can be granted." *Jones*, 2015 WL 4509871, at *5. Accordingly, dismissal is proper.

IV.     **CONCLUSION**

For the foregoing reasons, Defendant Board of Trustees of Community College of Baltimore County's Second Motion to Dismiss Plaintiff's Third Amended Complaint (ECF No. 47) is **GRANTED.** Given that this is Plaintiffs' Third Amended Complaint (ECF No. 45), it is **DISMISSED** with prejudice.

A separate Order follows.

Date: October 12, 2021                                      _____/s/_____

                                                             J. Mark Coulson
                                                             United States Magistrate Judge

16